**THOMPSON COBURN LLP**
JEFFREY N. BROWN (SBN 105520)
DAVID B. JINKINS (*Admitted Pro Hac Vice*)
jbrown@thompsoncoburn.com
djinkins@thompsoncoburn.com
2029 Century Park East, 19th Floor
Los Angeles, California 90067
Telephone:   (310) 282-2500
Facsimile:   (310) 282-2501

Attorneys for Plaintiffs COACH, INC. and
COACH SERVICES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| COACH, INC., a Maryland corporation; and COACH SERVICES, INC., a Maryland corporation, | Case No. 2:17-cv-04775-DMG-KS |
| Plaintiffs, | Honorable Dolly M. Gee |
| vs. | **PLAINTIFFS' TRIAL BRIEF** |
| CITI TRENDS, INC., a Delaware corporation; and KELLY MARTIN, an individual, | |
| Defendants. | |

1

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ......................................................................... 1

    A.    Factual Background .............................................................. 1

    B.    Plaintiffs' Claims ................................................................. 4

    C.    Plaintiffs' Claims for Statutory Damages ............................ 5

II.   REPLY TO DEFENDANTS' MEMORANDUM OF CONTENTIONS
    OF FACT AND LAW ......................................................................... 6

    A.    Claim 1 – Trademark Infringement by Counterfeiting ........ 6

        1.    A Likelihood of Confusion is Presumed if the Jury Finds
            Counterfeiting ................................................................. 6

        2.    Defendants' "Affirmative Defenses" Should Be Rejected ......... 7

            a.    Defendants' "Affirmative Defense" that the Marks
                Are Not "Counterfeits" is Without Merit ....................... 7

            b.    Defendants' "Affirmative Defense" that Their
                Fabric Selection Was Not Willful Conduct is Also
                Without Merit ................................................................. 8

    B.    Claim 2 – False Designation of Origin ................................ 8

        1.    Elements of Plaintiffs' Claim ........................................ 8

        2.    Defendants' "Affirmative Defenses" ............................. 9

    C.    Claim 4 – Unlawful Importation under the Tariff Act ........ 9

        1.    Elements of Plaintiffs' Claim ........................................ 9

        2.    The Marks Do Not Have to Be Identical To Prove an
            Unlawful Importation Claim Under the Tariff Act ................. 9

    D.    Affirmative Defense 1 – Laches ......................................... 10

III.  PLAINTIFFS' REPLY TO DEFENDANTS' OTHER CLAIMS ................ 11

    A.    The '318 Registration is Properly Before the Jury ............ 11

        1.    Plaintiffs Can Assert the '318 Registration ................. 11

    B.    Defendants Have Destroyed and Withheld Pertinent Evidence
        and Sanctions are Appropriate ........................................... 11

PLAINTIFFS' TRIAL BRIEF

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV1305167BROMANX,
  2015 WL 4517846 (C.D. Cal. 2015) ................................................. 11

6

7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc*., 457 F.3d 1062 (9th
  Cir. 2006) ........................................................................................... 8

8

9

*Audi AG v. D'Amato*, 381 F. Supp. 2d 644 (E.D. Mich. 2005), aff'd,
  469 F.3d 534 (6th Cir. 2006) .............................................................. 8

10

11

*Coach, Inc. v. Citi Trends, Inc.*, 2019 WL 1940622 (C.D. Cal. Apr. 5,
  2019) .................................................................................................. 10

12

13

*Consol. Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188
  (S.D.N.Y. 1999) .................................................................................. 7

14

*Edie v. Baca*, No. CV 03-6917 ABC JC, 2009 WL 3417844 (C.D. Cal.
  Oct. 19, 2009) ..................................................................................... 11

15

16

*Evergreen Safety Council v. RSA Network, Inc*., 697 F.3d 1221 .......................... 11

17

*Freeman v. Collins*, No. 2:08-CV-71, 2014 WL 325631 (S.D. Ohio Jan.
  29, 2014) ........................................................................................ 11, 12

18

19

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284
  (S.D.N.Y. 2003) .................................................................................. 6

20

21

*Haas Automation, Inc. v. Denny*, No. 2:12-CV-04779 CBM, 2013 WL
  6502876 (C.D. Cal. Dec. 4, 2013) ...................................................... 8

22

*In re Napster*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ............................ 12

23

24

*Kaloud Inc. v. Shisha Land Wholesale Inc.*, No. CV153706RGKPJWX,
  2016 WL 7444604 (C.D. Cal., Apr. 26, 2016) ..................................... 6

25

*Maduka v. Tropical Nats., Ltd.*, 409 F. Supp. 3d 337 (E.D. Pa. 2019) ...................... 11

26

27

*Nike, Inc. v. E. Ports Custom Brokers, Inc*., No. 2:11-CV-4390-CCC-
  MF, 2018 WL 3472628 (D.N.J. July 19, 2018) ................................... 10

28

ii

*Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, 621 F. Supp. 2d 1173
    (D. Utah 2009)........................................................................................12

*Sherwood v. BNSF Ry. Co.*, No. 2:16-CV-00008-BLW, 2019 WL
    1004563 (D. Idaho Mar. 1, 2019).........................................................12

*Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241
    (S.D.N.Y. 2015)........................................................................................8

*United States v. Chong Lam*, 677 F.3d 190 (4th Cir. 2012).......................7

**Statutes**

15 U.S.C. § 1125(a)(1) .................................................................................8

15 U.S.C. § 1117(c)(2) .................................................................................5

19 U.S.C. § 1526.....................................................................................9, 10

**INTRODUCTION**

Pursuant to Local Rule 16-10 and the Court's orders, Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively Plaintiffs or Coach) respectfully submit this Trial Brief to reply to the Memorandum of Contentions of Fact and Law submitted by Defendants Citi Trends and Kelly Martin. Since Defendants did not submit a revised memorandum as allowed by the Court, *see* Dkt. 156, at 18, Plaintiffs will also respond to some of Defendants' contentions and/or objections in recent pre-trial filings, addressing those issues believed to be necessary at the jury trial and/or court trial.[1]

**I.   PRELIMINARY STATEMENT**

   **A. Factual Background**

This case arises out of Defendants' willful counterfeiting of Coach's famous Signature C Trademarks. Defendants imported, distributed, offered for sale, and sold handbags and wallets bearing counterfeits of Plaintiffs' CC & Design (Signature C) Trademarks, U.S. Trademark Registration Nos. 2,626,565 and 2,822,318 ("Signature C Design Marks"). Defendants also obtained and used fabric in connection with the selection, ordering, manufacture, importation, distribution, offer for sale, and sale of handbags and wallets bearing counterfeits of Plaintiffs' Signature C Design Marks.

Defendants' counterfeiting led to the seizure of two separate shipments by the U.S. Bureau of Customs & Border Protection ("CBP") in late 2015. CBP seized those shipments after inspecting them and determining they contained handbags and wallets infringing Plaintiffs' famous Signature C Design Marks.

Defendant Martin is a merchandise manager for Citi Trends who has worked in the fashion industry for more than a decade; she has ordered handbags and wallets on Citi Trends' behalf since April 2012. Between at least early 2014 and early 2016,

---

[1] To the extent Plaintiffs do not address an issue on which the parties disagree, Plaintiffs maintain their objections to Defendants' positions.

1   Defendant Martin selected fabrics and designs for handbags and wallets and had

2   handbags and wallets manufactured by South Pacific & China Supply, Inc. ("South

3   Pacific" or "Blossom"). These handbags and wallets were intended to be sold by

4   Citi Trends.

5         Defendant Martin testified that she often traveled to California to visit South

6   Pacific and purchase goods – at least once with a supervisor.  During these visits,

7   South Pacific would display finished products that could be purchased, along with

8   swatches and templates for ordering and manufacturing goods. Defendant Martin

9   testified that she often took swatches back to her office in New York, and she

10  recalled the swatch at issue. Defendant Martin also testified that she would receive

11  product samples from South Pacific, which she would often show to her supervisor.

12        During her relationship with South Pacific, Defendant Martin often

13  exchanged emails with Sharon Ho, a South Pacific employee, concerning goods

14  ordered for and to be sold by Citi Trends.  In one such email in May 2014, Martin

15  requested "style numbers" for a design she called the "Coach print:"

16

---

**From:** Sharon Ho [mailto:sharonho@blossomaccessoryplaza.com]
**Sent:** Thursday, May 08, 2014 12:57 PM
**To:** Kelly Martin
**Subject:** Re: Recap # 3

Kelly,

see blue

sharon

On Thu, May 8, 2014 at 8:30 AM, Kelly Martin <kmartin@cititrends.com> wrote:
Sharon

Recap # 3

Upfront wallet cuts
Accordion wallets $1.50
Dbl zip wallets $2.25

Coach print        need style numbers
Accord
Brown   400     JA0011BR
Black    400     JA0011BK

Double zip
Brown   400     JZ0011BR
Black    400     JZ0011BK

---

Defendant Martin testified that her purchasing decisions were informed by what was "popular nationwide," and she explained that this "Coach print" most likely had the letter "C" in it – just like Plaintiffs' famous Signature C Design Marks. Defendant Martin testified she is aware of and familiar with Plaintiffs' Signature C Design Mark, and has even owned a wallet bearing that Mark. Defendant Martin also testified – and the evidence in this case shows – that Defendants ordered, purchased, and imported goods bearing the style descriptors of "Sign CC" and "Sig C," including the counterfeit goods seized by CBP.

The Seized Goods were made from jacquard fabric selected by Defendant Martin, and the seized wallets and handbags featured the same marks and design. Below are photographs of genuine Coach goods compared to the Seized Goods:

PLAINTIFFS' TRIAL BRIEF

Defendant Martin ordered these goods at an exceedingly low price: $1.35 per wallet and $2.20 per handbag. Defendant Martin believed these goods had been manufactured in China, but did not inquire about South Pacific's manufacturers, suppliers, or affiliates. Defendant Martin also claimed that she did not follow up with South Pacific about the seizure or fate of the Seized Goods, despite having been told that the goods had been detained because of "possible intellectual property violations." Instead, Defendant Martin attempted to reorder goods with the same design of the Seized Goods, which had been a "best seller" for Citi Trends.

The true scope of Defendants' counterfeiting cannot be known because of Defendants' destruction of relevant evidence. After the seizures, Defendant Martin destroyed purchase orders, fabric swatches, photographs, and product samples, all of which were frequently shown to her supervisor. Defendant Martin's emails were also apparently destroyed at Citi Trends' request pursuant to a company-wide purge.

Since at least 2014, when Defendant Martin requested a style number for the "Coach print," Defendant Citi Trends has conceded in its annual 10K reports that it is "susceptible to the receipt of counterfeit brands." Citi Trends has also been sued on numerous occasions for intellectual property infringement. Despite claiming in its 10K reports that it is therefore "important [to] establish relationships with reputable vendors," Citi Trends provided buyers like Martin with no formal training or instruction on how to select reputable vendors and avoid buying counterfeit goods. And despite claiming that it has "a quality assurance team" to assure that Citi Trends "purchase[s] only authentic brands … and [is] careful in selecting [its] vendors," Citi Trends' corporate deponent, Christina Short, confirmed that Citi Trends employees are not actually "checking at that level of quality control."

### B. Plaintiffs' Claims

After learning of Defendants' willful counterfeiting, Plaintiffs brought suit for trademark infringement by counterfeiting (claim 1), false designation of origin (claim 2), unlawful importation under the Lanham and Tariff Acts (claims 3 and 4),

1   and unfair competition under California statutory and common law (claims 5 and 6).

2   As a result of the Court's orders during this case, Plaintiffs may only seek statutory

3   damages for their claims of trademark infringement, false designation of origin, and

4   unlawful importation under the Tariff Act.[2]

5       Plaintiffs' trademark infringement by counterfeiting claim requires proof that

6   (1) the Signature C Design Marks are valid, protectable marks, (2) Plaintiffs own the

7   Marks as trademarks, (3) Defendants used a similar mark likely to cause consumer

8   confusion as to source, sponsorship, affiliation, or approval of the goods, and (4)

9   Defendants' mark is a counterfeit of Plaintiffs' Marks. *See* Dkt. 175, at 7:13-25.

10      Plaintiffs' false designation of origin by counterfeiting claim requires proof

11  that (1) Defendants used in commerce any word, mark, or other designation, (2) the

12  designation is likely to cause confusion with respect to the affiliation, connection, or

13  association of Defendants with Plaintiffs or with respect to the origin, sponsorship,

14  or approval of Defendants' goods by Plaintiffs, and (3) Defendants' mark is a

15  counterfeit of Plaintiffs' Signature C Design Marks. *See* Dkt. 175, at 8:1-12.

16      Plaintiffs' unlawful importation claim under the Tariff Act requires proof that

17  (1) merchandise of foreign manufacture was imported into the United States, (2) the

18  merchandise or its label, sign, print, package, wrapper, or receptacle bore Plaintiffs'

19  Signature C Design Mark(s), (3) Plaintiffs did not consent to such importation, and

20  (4) Defendants dealt in or imported such merchandise.  *See* Dkt. 175, at 8:20-9:2.

21  **C. Plaintiffs' Claims for Statutory Damages**

22      Defendants' willful conduct allows an award of up to $2,000,000 "per

23  counterfeit mark per type of goods" for each claim. 15 U.S.C. § 1117(c)(2). The

24  seized goods involve at least two marks ('565 Registration and the '318

25  Registration) and at least two separate types of goods for each mark—handbags and

26

27  [2] The statutory unfair competition claim has been dismissed for lack of standing, and
    Plaintiffs are limited to injunctive relief on their claims for unlawful importation
28  under the Lanham Act and for unfair competition under California common law.

wallets.  Thus, Plaintiffs will be seeking a statutory award of at least $8,000,000 for Defendants' willful conduct.

## II.   REPLY TO DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Defendants' Memorandum of Contentions of Fact and Law contains many inaccurate assertions regarding the law governing Plaintiffs' claims. Further, some of Defendants' affirmative defenses are improper because they are not affirmative defenses and are instead alleged deficiencies in Plaintiffs' prima facie claims.

### A. Claim 1 – Trademark Infringement by Counterfeiting

#### 1.  A Likelihood of Confusion is Presumed if the Jury Finds Counterfeiting.

In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of likelihood of confusion factors because counterfeit marks are inherently confusing. *Kaloud Inc. v. Shisha Land Wholesale Inc.*, No. CV153706RGKPJWX, 2016 WL 7444604, at *3 (C.D. Cal., Apr. 26, 2016) (citing *Phillip Morris*, 352 F. Supp. 2d at 1073). Accordingly, if a mark is counterfeit, a likelihood of confusion is presumed.

Defendants argue that the presumption of a likelihood of confusion in this case arises only if Defendants "intended to pass off the accused good[s] as genuine." Dkt. 172, at 41:10-12; *see also* Dkt. 135, at 9:22-23 (arguing Plaintiffs must prove an "intent to exploit the good will" associated with Plaintiffs' Marks). This argument lacks merit. There is no burden of proving a defendant's intent to pass off as courts presume that there is a likelihood of confusion given that the very purpose of a counterfeit is to confuse the public into believing that the goods at issue are associated with the trademark owner. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("confusing the customer is the whole purpose of creating counterfeit goods").  If the jury determines the goods are counterfeit, Defendants' intent and consumer confusion is presumed.

Defendants also argue that the presumption of a likelihood of confusion from a finding of counterfeiting is rebuttable.  *See* Dkt. 159, at 52:6-9.  Defendants do not provide any support for such a rebuttable presumption in their proposed jury instruction on the issue, and Defendants can provide no cases where the presumption was actually rebutted.

### 2. Defendants' "Affirmative Defenses" Should Be Rejected.

Local Rule 16-4.1 provides that Defendants' memorandum of contentions of fact and law should set forth "the counterclaims and affirmative defenses Defendant has pleaded and plans to pursue."  Defendants have asserted no counterclaims in this case and further admit that they are asserting no affirmative defenses at the jury trial.  Dkt. 135, at 14:25-26; Dkt. 175, at 16:19-21.  Any discussion of "defenses" asserted as affirmative defenses in Defendants' memorandum of contentions of fact and law is improper. Nevertheless, in an abundance of caution, Plaintiffs will respond to Defendants' alleged "affirmative defenses."

### a. Defendants' "Affirmative Defense" that the Marks Are Not "Counterfeits" is Without Merit.

Defendants assert the following "affirmative defense:" the marks used on the Seized Goods are not counterfeits of Plaintiffs' Signature C Design Marks. This is not an affirmative defense.  And whether the marks are counterfeit is for the jury to decide. Dkt. 86, at 8:10.  Furthermore, any supposed differences in the marks (as argued by Defendants) do not prevent the jury from finding that the marks used on Defendants' goods are identical to or substantially indistinguishable from the Signature C Design Marks. *See, e.g.*, *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (a "mark need not be absolutely identical" as this would "allow counterfeiters to escape liability by modifying … registered trademarks … in trivial ways"); *Consol. Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999) (summary judgment granted where there were a few "minor differences" in text, text placement, and coloration). Moreover, the use of a Citi

7

Trends' mark on the hangtag of an item does not relieve Defendants of liability. *See Tiffany & Co. v. Costco Wholesale Corp*., 127 F. Supp. 3d 241, 255 (S.D.N.Y. 2015) (summary judgment granted for trademark holder where counterfeiter sold ring in a box bearing the counterfeit mark and the inside of the ring bore a generic mark); *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 664 (E.D. Mich. 2005), aff'd, 469 F.3d 534 (6th Cir. 2006) (noting that even "disclaimers are generally regarded as ineffective" in counterfeiting cases). In addition, the Citi Trends' hangtag can be removed and would do nothing to dispel post-sale confusion. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc*., 457 F.3d 1062, 1077-78 (9th Cir. 2006) (disclaimers removed post-sale "do nothing to dispel post-purchase confusion.").

### b. Defendants' "Affirmative Defense" that Their Fabric Selection Was Not Willful Conduct is Also Without Merit.

Defendants also argue Plaintiffs cannot prove Defendants willfully counterfeited the marks because the design of the counterfeit goods "originated with South Pacific." This is not an affirmative defense and it defies logic. Defendants selected the fabric to be used in connection with the manufacturing of handbags and wallets for Citi Trends. Defendants thereafter had handbags and wallets manufactured with that fabric. The jury may find such conduct *of Defendants* is willful.

### B. Claim 2 – False Designation of Origin

#### 1. Elements of Plaintiffs' Claim

Defendants have inaccurately described the elements for Plaintiffs' false designation claims. For example, Defendants claim actionable confusion is limited to confusion as to the origin of the goods. *Compare* Dkt. 135, at 12:1-2 *with* Dkt. 159, at 23:8-9. That is incorrect: Actionable confusion can be as to "affiliation, connection, or association [of the parties], or as to the origin, sponsorship, or approval of [the defendant's] goods … by [the plaintiff]." 15 U.S.C. § 1125(a)(1); see also *Haas Automation, Inc. v. Denny*, No. 2:12-CV-04779 CBM, 2013 WL

6502876, at *10 (C.D. Cal. Dec. 4, 2013) (same). Plaintiffs otherwise incorporate all of their prior objections to Defendants' statement of the law governing Plaintiffs' false designation of origin claims. *See, e.g.*, Dkt. 159, at 24:1-25:21.

### 2. Defendants' "Affirmative Defenses"

Defendants cite the same purported "affirmative defenses" raised in their section addressing the trademark infringement by counterfeiting claim. Plaintiffs incorporate their responses as if fully set forth herein.

### C. Claim 4 – Unlawful Importation under the Tariff Act

#### 1. Elements of Plaintiffs' Claim

The elements set forth in Defendants' Memorandum of Contentions of Fact and Law are similar to – but have apparently been superseded by – those elements set out in their most recent set of disputed proposed jury instructions. Compare Dkt. 135, at 13:5-15 with Dkt. 159, at 65:3-10. Defendants' instruction misstates the second element of the claim by omitting that the offending mark may be affixed to merchandise or the merchandise's "label, sign, print, package, wrapper, or receptacle." Dkt. 175, at 8:25-26. Defendants also misinterpret the second element's requirement that the offending merchandise bear a "registered trademark."

### 2. The Marks Do Not Have to Be Identical To Prove an Unlawful Importation Claim Under the Tariff Act.

Defendants argue Plaintiffs' Tariff Act claim fails because the "registered trademark" used on the imported merchandise must be identical to Plaintiffs' Signature C Design Mark. *See* Dkt. 135, at 13:18-23; Dkt. 172, at 54:12-15. This assertion is incorrect as a matter of law as the Court has already ruled. *See* Dkt. 86, at 14:5-7 (noting Coach could "recover statutory damages under section 1526(a) … if it prevails on its trademark counterfeiting claim"); *see also* Dkt. 156, at 11-12 (ruling "that the Tariff Act makes section 1117(c) statutory damages" for counterfeiting "available for violations of section 1526(a)").

PLAINTIFFS' TRIAL BRIEF

Section 1526(a) makes it actionable to import foreign merchandise that "bears a [registered] trademark." 19 U.S.C. § 1526(a). Subsection (e) clarifies that this "mark" may be a counterfeit: It provides that "any such merchandise" previously mentioned in subsection (a) – namely, foreign merchandise bearing a registered mark – may be seized if that merchandise "bear[s] a counterfeit mark." 19 U.S.C. § 1526(e).  This wording necessarily assumes that merchandise can bear a registered mark within the meaning of subsection (a) if the offending mark is substantially indistinguishable from a registered mark (i.e., a counterfeit). And as this Court previously hinted, this wording also suggests subsection (a) is even broader and imposes liability even if the offending mark is merely infringing and not a counterfeit. *See Coach, Inc. v. Citi Trends, Inc.*, 2019 WL 1940622, at *7 (C.D. Cal. Apr. 5, 2019) ("Section 1526(e) applies only to counterfeit goods, but, on its face, section 1526(a) contains no similar 'counterfeit-only' requirement.").

Defendants have cited no case law supporting their argument.  A counterfeit mark is sufficient.  *See, e.g.*, *Nike, Inc. v. E. Ports Custom Brokers, Inc*., No. 2:11-CV-4390-CCC-MF, 2018 WL 3472628, at *4, 9 (D.N.J. July 19, 2018) (granting summary judgment in Nike's favor on its Tariff Act claim where the defendants imported "near-identical counterfeits of Nike's shoes and marks").

Plaintiffs are not required to prove that Defendants' goods bear marks that are identical to Plaintiffs' Signature C Design Mark in order to succeed under their Tariff Act claim.

**D. Affirmative Defense 1 – Laches**

Defendants intend to raise the equitable defense of laches. *See* Dkt. 135, at 14:14-26. In its approved pretrial order, however, the Court noted that Defendants have "preserved [laches] as a defense to any request for equitable relief" only "to the extent that Defendants asserted [the defense] in their answer." Dkt. 175, at 16:19-21. However, in Defendants' proposed findings of fact and conclusions of law for the Court Trial regarding this equitable affirmative defense, Defendants did not assert

10

1   this affirmative defense and did not propose any findings of fact and conclusions of

2   law regarding equitable laches.  Accordingly, this affirmative defense has now been

3   waived. *See Maduka v. Tropical Nats., Ltd.*, 409 F. Supp. 3d 337, 362 (E.D. Pa.

4   2019) (finding laches defense waived by trademark counterclaim defendant where

5   defense not asserted in findings of fact and conclusions of law). Moreover, equitable

6   defenses, such as laches, are not available here because of Defendants' willful

7   counterfeiting. *See Anhing Corp. v. Thuan Phong Co. Ltd*., No.

8   CV1305167BROMANX, 2015 WL 4517846, at *6 (C.D. Cal. 2015) (citing

9   *Evergreen Safety Council v. RSA Network, Inc*., 697 F.3d 1221, 1228 (9th Cir.

10  2012) ("The doctrine of laches does not apply in cases of willful infringement.")).

11       Plaintiffs incorporate their proposed findings of fact and conclusions of law

12  on this issue as if fully set forth herein.

### III.   PLAINTIFFS' REPLY TO DEFENDANTS' OTHER CLAIMS

#### A. The '318 Registration is Properly Before the Jury.

##### 1.  Plaintiffs Can Assert the '318 Registration

16       The Court has ruled that Plaintiffs may assert the '318 Registration at trial.

17  Dkt. 156, at 2-6. Defendants improperly argue against the Court's ruling. The

18  Court's ruling constitutes the law of the case on this point, and Defendants have not

19  provided any justification for reconsidering the issue. *See Edie v. Baca*, No. CV 03-

20  6917 ABC JC, 2009 WL 3417844, at *4 (C.D. Cal. Oct. 19, 2009) ("Under the law

21  of the case doctrine, when a court decides upon a rule of law, the decision continues

22  to govern the same issue in subsequent stages of the same case.").

#### B. Defendants Have Destroyed and Withheld Pertinent Evidence and Sanctions are Appropriate

25       Defendants have destroyed and withheld evidence in this case.  Plaintiffs'

26  request for sanctions for this conduct is proper.  "No federal rule dictates the timing

27  of a request for spoliation sanctions." *Freeman v. Collins*, No. 2:08-CV-71, 2014

28  WL 325631, at *7 (S.D. Ohio Jan. 29, 2014). "Rather, trial courts are free to

consider a number of factors," and some have said that a party preserves the issue of spoliation sanctions if it is raised "prior to or within the final pretrial order." *Id.* (citation omitted). Moreover, in *Sherwood v. BNSF Ry. Co.*, No. 2:16-CV-00008-BLW, 2019 WL 1004563, at *2 (D. Idaho Mar. 1, 2019), the court considered a spoliation motion filed shortly before trial "in the interests of resolving this issue on the merits."  The Court should thus reject Defendants' argument that Plaintiffs' request is untimely or otherwise inappropriate.

Defendants were aware that the goods at issue in this case were seized by the federal government for being counterfeit in the fall of 2015.  Once Defendants learned of the first seizure of their counterfeit goods, Defendants knew there was a possibility of a suit.  *See, e.g.*, *In re Napster*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (litigation was sufficiently foreseeable in part because defendants "had already been sued once, and there were several indicators that they would be sued again"); *Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1191 (D. Utah 2009) (manufacturer could foresee litigation related to component part when it was "sensitized" to issue with the component based on suits against others).

DATED:  February 18, 2020          **THOMPSON COBURN LLP**


By:   /s/ *Jeffrey N. Brown*
　　　 **JEFFREY N. BROWN**
　　　 **DAVID B. JINKINS**
　　　 Attorneys for Plaintiff COACH INC.
　　　 and COACH SERVICES, INC.

12